IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**JOHN C. LAUSHAW**
**PLAINTIFF**

V.　　　　　　　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO.**
　　　　　　　　　　　　　　　　　　　　　　　　　**2:11CV134-MTP**

**CHRISTOPHER EPPS,** *et al.*　　　　　　　　　　　　　　　　　　　**DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the court on two Motions for Summary Judgment [39][46] filed by Defendants, Christopher Epps, Dr. Ron Woodall, Dr. Charmaine McCleave and Wexford Health Sources, Inc. Having reviewed the submissions of the parties and the applicable law, the court finds that Defendants' Motions for Summary Judgement [39][46] should be GRANTED.

FACTUAL BACKGROUND

Plaintiff John C. Laushaw is currently incarcerated in the Central Mississippi Correctional Facility ("CMCF"), serving a life sentence for one count of murder, 30 years for one count of armed robbery, and 10 years for one count of kidnaping.[1] Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on December 06, 2010.

As set forth in his pleadings, and as amended by the sworn testimony given during his *Spears* hearing,[2] Plaintiff alleges that he was denied adequate medical care and that the

---

[1] *See* MDOC database, http://www.mdoc.state.ms.us/InmateDetails.asp?PassedId=74603.

[2] *See Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint). Plaintiff's *Spears*, or Omnibus hearing occurred on October 25, 2011. *See* Ex. A to Motion [39-1].

1

Defendants, Christopher Epps, Dr. Charmaine McCleave, Dr. Ron Woodall, and Wexford Health Sources, Inc. were deliberately indifferent to his serious medical needs. These allegations refer specifically to the pain he suffers as a result of a drop left foot, a pin in his left elbow, and a rod in his left hip.[3] The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at South Mississippi Correctional Institution ("SMCI") from approximately December 2009 until October 2010.

On February 14, 2012, Wexford Health Sources, Inc., Ron Woodall, and Charmaine McCleave filed their Motion for Summary Judgment [39]. On March 12, 2012, Christopher Epps filed a Motion for Summary Judgment [46]. On April 6, 2012, Plaintiff filed his response [49] in opposition to both of the motions.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of

---

[3]Plaintiff was in a car accident approximately one year before he was incarcerated, in which he broke his left femur, left elbow, and damaged muscle and nerves in his left leg causing his left foot to drop. *See* Ex. D to Memorandum [49-4]. The doctors at University Medical Center placed a rod in the left femur and a pin in the left elbow to assist with the healing of the breaks. *Id.*

disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. The presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), "conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), or unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), are not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983.  However, Section 1983  "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers."   *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981).  Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.").  "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly*

*v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted).  The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

### Denial of Adequate Medical Care

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. CIVA 403CV141WHBJCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, Plaintiff's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

### *Epps*

Plaintiff alleges a claim against Defendant Christopher Epps, the Commissioner of the Mississippi Department of Corrections ("MDOC"), for his responsibility in Plaintiff receiving inadequate/deliberately indifferent health care. Specifically, Plaintiff claims that Epps is legally responsible for the pain and suffering caused by the actions of the doctors employed by Wexford Health Sources, Inc., which were contracted by Epps to provide MDOC inmates with medical treatment.

Plaintiff claims that while he was an inmate at SMCI, he suffered from chronic pain as a result of a car accident prior to his incarceration. He has a pin in his left elbow, a rod in his left

hip, and suffered from a deteriorating condition of drop foot. Plaintiff claims that on several occasions he was referred to a specialist for surgical treatment but that those recommendations were ignored by both Dr. McCleave and Dr. Woodall.

Further, Plaintiff claims that "[d]efendant Epps intentionally failed to disclose Plaintiff['s] 2004 ARP which shows Plaintiff had been referred to a specialist by Dr. Almand." *See* Memorandum [49]. Plaintiff alleges Epps received and signed the Administrative Remedy Program Third Step response, but instead of sending Plaintiff to see the specialist, he received the same treatment, which was a leg brace and special orthopedic shoes. *See* Tr. [39-1] at 21. Plaintiff claims this documentation proves that Defendant Epps had knowledge of Plaintiff's medical situation since 2004. *Id*.

In his Motion for Summary Judgement [46], Christopher Epps claims that Plaintiff's complaint should be dismissed because it does not establish a constitutional violation using the standard pronounced in *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)(following two-part test for deliberate indifference), that there is no credible evidence to prove any of Plaintiff's claims, and that Epps is entitled to qualified immunity for Plaintiff's claims against him in his individual capacity. *See* Motion [46].

In order to prove a constitutional violation there must be proof of deliberate indifference. As pointed out earlier, the test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x. at 965 (quoting *Domino*, 239

F.3d at 756). By these standards, Plaintiff failed to establish evidence showing a deliberate indifference on the part of Epps.

Plaintiff testified that he sued Epps because of his supervisory capacity over the doctors employed by Wexford. *See* Tr. at 18-20. Epps is not legally responsible for the actions of these employees. As stated above, Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver,* 276 F.3d at 742 & n.6; *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.").

Supervisory prison officials may be held liable for a Section 1983 violation only if they were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins,* 828 F.2d at 304; *see also Ashcroft v, Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As stated in his sworn affidavit, Defendant Epps has no personal role in the medical care given to inmates, no authority to grant or deny treatment, and no personal involvement with Plaintiff other than his being an inmate in the State penal system. *See* Ex. A to Motion [46-1].

As stated earlier, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *See supra Mairena*, 816 F.2d at 1064. Plaintiff has failed to prove or establish that a policy, custom or practice of the MDOC was the "moving force" behind the alleged constitutional violation. *See Monell*, 436 U.S.

at 694. Thus, Defendant Epps is not liable in his official capacity.

For the foregoing reasons, Christopher Epps is entitled to judgment as a matter of law.

*Wexford*

Plaintiff's only claim against Wexford is that it is the medical service provider for MDOC and that it employed two of the Defendant doctors that treated Plaintiff at SMCI. As stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6; *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505-06 (1982) (holding that plaintiff could not recover against private state-employed company under Section 1983 based on theory of respondeat superior). Further, Plaintiff has failed to demonstrate that Wexford affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy. *See Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)(holding that in order to establish vicarious liability it must be proven that Defendant affirmatively participated in a constitutional deprivation or implemented an unconstitutional violation). In his sworn affidavit, Dr. Woodall, a Wexford employee, testified that Plaintiff received the proper treatment and that surgery was not needed. *See* Ex. B to Motion [39-2]. The records reflect that Plaintiff was regularly seen and treated for pain and other conditions stemming from his surgical hardware and drop foot during the time period he was incarcerated at SMCI. *See* Ex. C [43] to Motion.

Plaintiff's Response [49] fails to establish any genuine issues of material fact regarding his claims for deliberate indifference against Wexford. Instead, Plaintiff focuses on allegations regarding Drs. Woodall and McCleave's treatment of his injuries and Epps' legal responsibility for contracting the medical services of Wexford. *See* Response [49] at 3-7. Wexford cannot be held liable for the acts of Drs. Woodall and McCleave. *See Oliver* 276 F.3d at 742 & n.6. While

8

Plaintiff may disagree with the medical treatment that was provided, this does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292; *see also McMahon*, 583 F.2d at 174 (holding that prisoners are not entitled to the "best" medical treatment available).

Accordingly, Wexford is entitled to judgment as a matter of law.

### *Dr. Woodall and Dr. McCleave*

Plaintiff's claims against Dr. Ron Woodall and Dr. Charmaine McCleave are basically the same. Both doctors were employed by Wexford and saw Plaintiff within two months of each other in 2010 for chronic pain stemming from the surgical hardware in his left elbow and left hip and the deteriorating condition of his drop left foot. Drs. Woodall and McCleave allegedly failed to prescribe the appropriate treatment to Plaintiff, in light of his condition. Plaintiff claims that this amounted to deliberate indifference to his serious medical needs.

In his affidavit, Dr. Woodall, Medical Director at SMCI, states that in his professional opinion, Plaintiff "has received all necessary and appropriate medical treatment." *See* Ex. B to Motion [39-2]. During the time that Plaintiff was being treated at SMCI "he was provided with Ultram, Mobic, Percogesic, an analgesic balm, and Acetaminophen" and "was given an injection of Solumedrol." *Id.* He has also been x-rayed and shown no acute changes. *See* Ex. C [43] to Motion at 58, 59, and 147. Furthermore he was provided with orthopedic shoes and a leg brace which was routinely fitted. *Id.* at 134. Dr. Woodall stated that the medications given to Plaintiff were appropriate for his condition and Plaintiff did not need a surgical consultation for removal of the rod, screws, or plates; x-rays revealed that they were still in place. *See* Ex. B to Motion [39-2].

In his opposition [49], Plaintiff expounds on his allegations against the doctors. *See*

Response [49]. Specifically, Plaintiff claims both doctors prescribed inadequate medication for his chronic pain, and failed to recommend allegedly necessary surgical procedures after reviewing Plaintiff's x-rays. *Id.*

Plaintiff's disagreement with the medication prescribed by the doctors, or their method of examination, treatment, and/or diagnosis for his ailments, simply does not rise to the level of a constitutional violation. *See Norton*, 122 F.3d at 292. Even assuming Drs. Woodall and McCleave should not have prescribed the same medication for Plaintiff when it had not been effective in the past, such conduct constitutes only negligence, which does not amount to deliberate indifference. *See Daniels*, 474 U.S. at 333-34. While the court is sympathetic to Plaintiff's medical condition, Plaintiff is reminded that prisoners are not entitled to the "best" medical treatment available or the treatment of their choosing. *See McMahon*, 583 F.2d at 174.

The record clearly demonstrates that Plaintiff received regular treatment and that the Defendant physicians were not deliberately indifferent to his needs. Accordingly, Drs. Woodall and McCleave are entitled to judgment as a matter of law.

**<u>Qualified Immunity</u>**

Although the Defendants raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999). Because the court finds that the Plaintiff's claims are not cognizable as constitutional claims, it declines to address the issue of whether Epps is entitled to qualified immunity. *Wells*, 45 F.3d at 93.

CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [39][46] should be GRANTED. Accordingly,

IT IS, THEREFORE, ORDERED:

1. That the Defendants' Motions [39][46] are GRANTED and this action is dismissed with prejudice.

2. A separate judgment will be entered pursuant to Fed. R. Civ. P. 58.

SO ORDERED this the 27 day of July, 2012.

s/ Michael T. Parker<br>
United States Magistrate Judge